# EXHIBIT 1

**From:** Keith Mathews
**To:** Krasinski, Anna (USANH)
**Subject:** Re: [EXTERNAL] Re: US v. Stottlar
**Date:** Thursday, February 3, 2022 2:43:37 PM

Anna,

I would like to view the letter, as to the remaining issues I will be in touch shortly.

Do you have availability tomorrow?

Keith

Sent from my iPhone

> On Feb 3, 2022, at 1:21 PM, Krasinski, Anna (USANH) <Anna.Krasinski██████████> wrote:
>
> Keith,
>
> Following up on this, as it relates to the news article I previously disclosed, I have obtained a letter from the Strafford County Sheriff's Office noting that the office found no wrong doing on the part of Det. Buffington. If you would like to review a copy, please arrange a time to come view it at my office.
>
> Best,
> Anna
>
> **From:** Krasinski, Anna (USANH)
> **Sent:** Wednesday, February 2, 2022 2:08 PM
> **To:** Keith Mathews <Keith@██████████>
> **Subject:** RE: [EXTERNAL] Re: US v. Stottlar
>
> Keith,
>
> As an initial matter, the charges here relate to drugs and guns found during traffic stops and a search of Mr. Stottlar's home. As such, the government does not intend to introduce trial testimony from any informant. Additionally, I have confirmed with Detective Buffington that he is not related to K.M., the individual who provided information that led to the August 8, 2019 traffic stop.
>
> You claim that Detective Buffington must have somehow put your client's name in J.M.'s head when J.M. spoke about Stottlar providing methamphetamine to C.H. But recall that Mr. Stottlar admitted to being the source of supply for both C.H. and C.K.

during his proffer on March 29, 2021.  Indeed, Mr. Stottlar said that he sold meth to C.H. on approximately 20 different occasions and had sold C.H. a quarter to a half pound of methamphetamine at a time.

As to your specific discovery requests, my responses are below:

1. **Request: Any information regarding the whistleblower complaint against Buffington described in the article you provided**. The government has nothing responsive to this request other than the link I've already provided to you.  As I mentioned earlier, my office conducted a formal Giglio inquiry before the *Hardy* trial on Detective Buffington and there was nothing responsive.  I will do another formal Giglio inquiry in advance of our trial and update any disclosures, if necessary.

2. **Request: Copies of any transcripts of Buffington's testimony at any trial, pre-trial hearings or grand jury proceedings.** The government declines this request.  Detective Buffington did not testify before the grand jury in this case.  Similarly, he has not testified in any pretrial hearing in this case.  I have provided you with Detective Buffington's testimony from the *Hardy* case.  I do not believe my office ordered transcripts from the *Gauthier* trial, but I'm sure you can download those from CMECF.  I expect that most of Detective Buffington's testimony has been in state court, and those records are not in the government's custody or control.

3. **Request: Unredacted statements from cooperating witnesses.** The government declines this request.  All information that J.M. provided about Mr. Stottlar was included in the report previously provided to you.  Mr. Stottlar is not entitled to information provided by J.M. about any other individuals, and that information was appropriately redacted from the report disclosed in discovery.  In addition, the government has already produced unredacted reports detailing information K.M. provided.  The government does not intend to call either J.M. or K.M. as witnesses at trial and the government does not intend to use J.M.'s information as relevant conduct.

4. **Request: Any information affecting the potential sentence of cooperating witnesses including evidence as to the scope and history regarding their criminal activity.**  The government declines this request.  The government intends to call only chemists and law enforcement witnesses at trial.

I don't anticipate that litigating these discovery issues will necessitate a trial continuance.  Mr. Stottlar has been incarcerated pretrial for a lengthy time and I am preparing to try this case as scheduled in March.

Best,

Anna

---

**From:** Keith Mathews

**Sent:** Wednesday, February 2, 2022 11:30 AM
**To:** Krasinski, Anna (USANH) <​​​​​​​​​​​​​​​​>
**Subject:** [EXTERNAL] Re: US v. Stottlar

Anna,

I respectfully disagree with you regarding Detective Buffington as well as the argument that Hardy was unrelated to his conduct. My understanding is as follows that M.J. did not mention my client until the third meeting with investigators, a meeting that notably was the first that Buffington was at. The argument seems to be, therefore, that Buffington put Jared's name in the informants mind resulting in the false testimony that caused the reversal of this conviction. This fact would not only implicate Buffington's credibility in that case but in any case where Detective Buffington would testify.

There have been other issues with Buffington there was an issue of inadequate investigation in U.S. v. Gauthier as well. This is of concern to Mr. Stottlar directly as:

1. The informant in this case is related to Detective Buffington and a review of the discovery indicates that Detective Buffington was still involved despite that concern.

2. Detective Buffington's testimony regarding his search of the bag contradicts Mr. Stottlar's memory of that event.

3. If Detective Buffington was involved in the meeting where Jared's name came up for the first time from M.J. it raises the question as to how many other informants brought up Jared's name after meeting with Buffington and certainly makes the use of Buffington's family member as an informant in this case all the more concerning.

I intend to file for the following additional discovery if it is not produced before the end of the week, my expectation is that reviewing and compiling this information, particularly if I need to file a motion, may force us to push trial.

1. Any information regarding the whistleblower complaint against Buffington described in the article you provided. My expectation is that after the

2. Copies of any transcripts of Buffington's testimony at any trial, pre-trial hearings or grand jury proceedings.

3. Unredacted statements from cooperating witnesses;

4. Any information affecting the potential sentence of cooperating witnesses including evidence as to the scope and history regarding their criminal activity.

As these concerns evolve I may have additional requests, but certainly the behavior of Detective Buffington as it directly relates to my client is extremely alarming. Please let me know where you stand on these issues and whether I will

need to file a motion by the end of business tomorrow.

Regards,

Keith


On 1/31/2022 5:04 PM, Krasinski, Anna (USANH) wrote:

> Keith,
>
> Following up on our call regarding Detective Buffington, my office conducted a formal Giglio inquiry before the Hardy trial on Detective Buffington and there was nothing responsive.  The government did come across the following article related to Detective Buffington: https://www.laconiadailysun.com/news/courts_cops/suspended-deputy-allegesretaliation-harassment/article_9e403236-99ce-11ea-9289-ffd02278fb42.html.  My understanding is that the result of the investigation is that Detective Buffington was cleared of any wrong doing.  I do not believe this information would be admissible for impeachment purposes under Rule 608, but (as was done in the Hardy case) I am providing this information to ensure that you are aware of it.  If this matter proceeds to trial and you believe it is admissible, please let me know and I will be prepared to address it with the Court pretrial.
>
> I have attached the motion to vacate the convictions in *United States v. Hardy*.  As you will see, the dismissal in that case was unrelated to Detective Buffington.   Similarly, I have attached the trial transcript from the first day of the *Hardy* trial.  Detective Buffington's testimony in that case had nothing to do with your client.
>
> As it relates to your client, J.M. (referenced in the dismissal motion) provided information that Jared Stottlar delivered a package to C.H., and that when C.H. went back into J.M.'s mother's house, J.M., C.H., and others then broke down a large quantity of methamphetamine.  I do not believe these reports to be discoverable for a number of reasons, including because I do not intend to call J.M. as a witness.  That said, I will provide a redacted version of this inculpatory information to you in discovery.
> Finally, this matter is scheduled for trial on March 15.  In order to resolve this matter, I would, subject to management approval, agree to a plea under the provisions of Rule 11(C)(1)(B) to an information charging him with a 924(c) and 5-year mandatory minimum drug count, where the government would recommend the low-end of the guideline range.  I'd note that I suggested this as a possible resolution in my email dated November 10, 2021.  I plan to begin my trial preparation this week, so

please let me know by Wednesday before noon if Mr. Stottlar intends to plead guilty.  As I have mentioned in all of my e-mails regarding a possible plea, all preliminary discussions are subject to management approval.
Best,
Anna